PATRICE HAMILTON, CONSERVATOR (ESTATE
OF F)*  *v.* UNITED SERVICES
AUTOMOBILE ASSOCIATION
(AC 29633)

Harper, Lavine and Hennessy, Js.

Argued February 5—officially released July 21, 2009

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

*Paul A. Slager*, with whom was *Amanda R. Whitman*, for the appellant (plaintiff).

*Joseph J. Arcata III*, with whom were *Charles A. Deluca* and, on the brief, *Catherine S. Nietzel*, for the appellee (defendant).

*Opinion*

LAVINE, J. In this declaratory judgment action, the plaintiff, Patrice Hamilton, as conservator of the estate of the victim, F, appeals from the judgment of the trial court, *Shaban, J.*, granting the motion to dismiss filed by the defendant, United Services Automobile Association.[1] On appeal, the plaintiff claims that the court improperly granted the defendant's motion to dismiss because (1) she has standing to bring the action, (2) the action is ripe for adjudication and (3) there are no alternative remedies. We conclude that the matter is not ripe for adjudication and, therefore, affirm the judgment of the trial court.[2]

In her amended complaint filed on September 12, 2007, the plaintiff sought a declaratory judgment pursuant to Practice Book § 17-54 et seq. She alleged that the defendant, an insurance company licensed to do business in Connecticut, had issued a homeowners liability insurance policy (policy) to John E. Thorson, providing coverage from August 25, 2001, through August 25, 2002. The defendant renewed the policy for subsequent periods of one year that ended on August 25, 2006. The defendant also issued an umbrella insurance

[1] John E. Thorson and Personal Counseling Associates were given notice of this action as required by Practice Book § 17-56 (b). Thorson filed an appearance before the trial court as an interested party.

[2] Because we conclude that the action is not ripe for adjudication, we need not reach the plaintiff's other claims. Although this case is decided on the ground of ripeness, no inference should be drawn with respect to whether the plaintiff has standing to bring a declaratory judgment action under the factual circumstances of this case.

policy to Thorson that was in effect from October 18, 2001, until September 21, 2006.

In addition, the amended complaint alleged that the plaintiff, as conservator of the victim's estate, had commenced a civil action against Thorson in the judicial district of Danbury, *Hamilton* v. *Thorson,* Superior Court, judicial district of Danbury, Docket No. CV-06-5001461-S (*Thorson* action), that is currently pending.[3] The *Thorson* action alleges professional negligence and negligent infliction of emotional distress against Thorson and alleges that as a result of Thorson's negligence, the victim has suffered permanent and severe injuries. The amended complaint also alleges that the defendant has disclaimed coverage of the claims in the *Thorson* action and has refused to provide Thorson with a defense in that action. The plaintiff claims that the defendant has a duty to defend and to indemnify Thorson for the claims alleged against him in the *Thorson* action.

The amended complaint further alleges that the plaintiff, as the conservator of the victim's estate, has a legal or equitable interest by reason of the uncertainty of the defendant's rights and obligations with regard to the plaintiff's claims in the *Thorson* action and that there is an actual and substantial issue in dispute due to the uncertainty of the legal relations between the parties that requires settlement. Moreover, all parties having an interest in the subject matter of the declaratory judgment action have been served with the complaint and made a party to the action or have been given notice of it.[4] The plaintiff also alleged that there is no other

[3] The court, *Mintz, J.,* granted the plaintiff's motion to stay the *Thorson* action.

[4] The plaintiff attached a certificate stating that notice was given to both Thorson and Personal Counseling Associates via certified mail at the Bridgeport Correctional Facility. Thorson is the only known principal of Personal Counseling Associates.

form of proceeding that can provide her with immediate redress. In her prayer for relief, the plaintiff alleged that the defendant has a duty to defend Thorson[5] in the *Thorson* action and to indemnify Thorson in that action as well.

On October 26, 2007, the defendant filed a motion to dismiss the declaratory judgment action, claiming that the court lacked subject matter jurisdiction because (1) the plaintiff did not have standing to bring the action, (2) the claim was not yet ripe for adjudication and (3) the plaintiff has rights pursuant to General Statutes § 38a-321.[6] The plaintiff objected to the motion to dismiss on November 30, 2007, expounding on the factual

---

[5] We note that the plaintiff sought a judicial declaration that the defendant had a duty to defend Thorson. That prayer for relief is not analyzed by the parties in their motion papers, although the defendant cited 16 L. Russ & T. Segalla, Couch on Insurance (3d Ed. 2005) § 227:32, pp. 227-45-46 (cases of third party attempts to determine duty of insurer to defend insured in underlying tort action frequently found to be improper due to third party's lack of standing; no actual controversy between insurer and third party; third party has no present adverse legal interest in insurer's obligation to insured) in its motion to dismiss. In her objection to the motion to dismiss, the plaintiff did not analyze the insurer's duty to defend or respond to the legal proposition from Couch. Her objection to the motion to dismiss is focused on the plaintiff's need to determine coverage to avoid invading the victim's privacy, if it is unlikely that she will obtain a meaningful recovery.

It is axiomatic that an insurer's duty to defend is broader than its duty to indemnify and is triggered by the nature of the claims alleged in the pleadings, not by an assessment of which party will prevail. See *Hartford Casualty Ins. Co.* v. *Litchfield Mutual Fire Ins. Co.*, 274 Conn. 457, 463–64, 876 A.2d 1139 (2005). In its memorandum of decision, the court mentioned only that the plaintiff sought a declaratory judgment with respect to the duty to defend. It did not address the issue specifically, including the defendant's reliance on Couch. The plaintiff did not seek an articulation of the court's decision with respect to the duty to defend. See Practice Book §§ 61-10 and 66-5. The record is inadequate for our review with respect to the defendant's duty to defend, and we therefore do not address it. See *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 232, 828 A.2d 64 (2003).

[6] General Statutes § 38a-321 provides in relevant part: "Each insurance company which issues a policy to any person . . . insuring against loss or damage on account of bodily injury . . . for which loss . . . such person . . . is legally responsible, shall, whenever a loss occurs under such policy, become absolutely liable, and the payment of such loss shall not depend

allegations in the *Thorson* action. In the *Thorson* action, the plaintiff alleged that Thorson, a licensed professional counselor, had treated the victim in his home for a variety of emotional and mental health issues. Thorson was negligent in his treatment of the victim between 2002 and 2005 because, the plaintiff alleged, he failed to maintain professional boundaries between himself and the victim and encouraged the victim to communicate with him via telephone and e-mail at all times of the day and night. Thorson allegedly cultivated the victim's trust and dependence on him, which allowed him to manipulate and to exploit the victim sexually over a period of years. As a result of Thorson's negligence and negligent infliction of emotional distress on the victim, the plaintiff alleged that the victim has suffered severe and permanent injuries.

In her objection to the motion to dismiss, the plaintiff stated that as a result of discovery in the *Thorson* action, she learned that her claims against Thorson *potentially were covered* by insurance policies issued to him by the defendant but that the defendant had disclaimed any duty to defend or to indemnify Thorson. "Because of the sensitive nature of the subjects involved in the [*Thorson* action], and the *potential harm* the discovery process, including being subject to deposition, *may have* on [the victim's] delicate mental state, [the] plaintiff wishes to determine whether there is insurance coverage for her claims before proceeding with the

upon the satisfaction by the assured of a final judgment against him for loss . . . by such casualty. . . . Upon the recovery of a final judgment against any person . . . including administrators . . . for loss or damage on account of bodily injury . . . if the defendant in such action was insured against such loss . . . at the time when the right of action arose and if such judgment is not satisfied within thirty days after the date when it was rendered, such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment."

[*Thorson* action]. If it is determined that no insurance coverage exists for [the] plaintiff's claims, [the] plaintiff may decide it is not in [the victim's] best interests to subject [her] to the emotional strain of litigating the underlying case, if [the victim] is unlikely to obtain any meaningful recovery due to a lack of insurance coverage." (Emphasis added.)

The court issued a memorandum of decision on February 1, 2008, granting the motion to dismiss. In its memorandum of decision, the court concluded that (1) although the defendant might be liable to pay the claim against Thorson, the amended complaint did not allege that the defendant and Thorson intended the defendant to assume a direct obligation to the plaintiff, and, therefore, she lacks standing to bring the action, (2) the action is not ripe because there has been no determination in the *Thorson* action that Thorson is liable to the plaintiff for professional negligence and negligent infliction of emotional distress, and (3) the plaintiff cannot avail herself of Thorson's rights under § 38a-321 until a final judgment has been rendered in her favor in the *Thorson* action. The plaintiff appealed, claiming that the court improperly granted the defendant's motion to dismiss.

"Any defendant, wishing to contest the court's jurisdiction, may do so even after having entered a general appearance, but must do so by filing a motion to dismiss within thirty days of the filing of an appearance. . . ." Practice Book § 10-30.[7] "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially

---

[7] See also Practice Book § 10-31, which provides in relevant part: "(a) The motion to dismiss shall be used to assert (1) lack of jurisdiction over the subject matter . . . . This motion shall always be filed with a supporting memorandum of law, and where appropriate, with supporting affidavits as to facts not apparent on the record.

"(b) Any adverse party who objects to this motion shall . . . file and serve . . . a memorandum of law and, where appropriate, supporting affidavits as to facts not apparent on the record."

asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . When a [trial] court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *Tuchman* v. *State*, 89 Conn. App. 745, 750, 878 A.2d 384, cert. denied, 275 Conn. 920, 883 A.2d 1252 (2005).

"Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it . . . . If a court lacks subject matter jurisdiction to hear and determine cases of the general class to which the proceedings in question belong, it is axiomatic that a court also lacks the authority to enter orders pursuant to such proceedings. . . . [A] court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . [W]here a decision as to whether a court has subject matter jurisdiction is required, every presumption favoring jurisdiction should be indulged." (Citations omitted; internal quotation marks omitted.) *ABB Automation, Inc.* v. *Zaharna*, 77 Conn. App. 260, 263–64, 823 A.2d 340 (2003).

"A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Miller* v. *Egan*, 265 Conn. 301, 313, 828 A.2d 549 (2003).

In its motion to dismiss, the defendant claimed, in part, that the plaintiff's declaratory judgment action

was not ripe for adjudication. Our Supreme Court "has not defined expressly the precise relationship between ripeness and justiciability, [but] it is well settled in the federal courts that ripeness is one of several justiciability doctrines, including standing and mootness." (Internal quotation marks omitted.) *Liberty Mutual Ins. Co. v. Lone Star Industries, Inc.*, 290 Conn. 767, 812, 967 A.2d 1 (2009). "An issue regarding justiciability . . . must be resolved as a threshold matter because it implicates the court's subject matter jurisdiction . . . ." (Internal quotation marks omitted.) Id.

Our Supreme Court has stated that a declaratory judgment action commenced under General Statutes § 52-29[8] provides "a valuable tool by which litigants may resolve uncertainty of legal obligations. . . . The [declaratory judgment] procedure has the distinct advantage of affording to the court in granting any relief consequential to its determination of rights the opportunity of tailoring that relief to the particular circumstances. . . . A declaratory judgment action is not, however, a procedural panacea for use on all occasions, but, rather, is limited to solving justiciable controversies. . . . Invoking § 52-29 does not create jurisdiction where it would not otherwise exist." (Internal quotation marks omitted.) Id., 812–13.

"[W]hile the declaratory judgment procedure may not be utilized merely to secure advice on the law . . . or to establish abstract principles of law . . . or to secure the construction of a statute if the effect of that construction will not affect a plaintiff's personal rights . . . it may be employed in a justiciable controversy where the interests are adverse, where there is an actual bona

---

[8] General Statutes § 52-29 (a) provides: "The Superior Court in any action or proceeding may declare rights and other legal relations on request for such a declaration, whether or not further relief is or could be claimed. The declaration shall have the force of a final judgment."

fide and substantial question or issue in dispute or substantial uncertainty of legal relations which requires settlement, and where all persons having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof." (Citations omitted; internal quotation marks omitted.) *Pamela B.* v. *Ment*, 244 Conn. 296, 323, 709 A.2d 1089 (1998).

"In deciding whether the plaintiff's complaint presents a justiciable claim, [the court] make[s] no determination regarding its merits. Rather, we consider only whether the matter in controversy [is] capable of being adjudicated by judicial power according to the . . . well established principles. . . . [T]he rationale of the ripeness requirement . . . [is] to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . ." (Citation omitted; internal quotation marks omitted.) *Liberty Mutual Ins. Co.* v. *Lone Star Industries, Inc.*, supra, 290 Conn. 813–14.

On the basis of the allegations in the plaintiff's complaint, we conclude that this declaratory judgment action is not ripe for adjudication because any claim that the plaintiff may have against the defendant is contingent on her prevailing in the *Thorson* action, which has not yet been adjudicated. Although the plaintiff's desire to protect the victim from any possible harm that may result from the litigation is understandable,[9] it cannot negate the established principles of subject mater jurisdiction. When the plaintiff filed this action, her claim against the defendant was, and still is, a mere possibility. Until there has been a judicial determination that Thorson is liable to the plaintiff, the question of whether the defendant is obligated to provide insurance

---

[9] The plaintiff's fears that the victim may suffer harm are speculative, as she has not alleged that pursuing the *Thorson* action is contrary to medical advice.

coverage in this declaratory judgment action is a hypothetical one.

By means of comparison, this court determined that the question of coverage was ripe for adjudication in *St. Paul Fire & Marine Ins. Co.* v. *Shernow*, 22 Conn. App. 377, 577 A.2d 1093 (1990). In that case, the plaintiff insurer (insurer) filed a declaratory judgment action to determine whether, under the policy at issue, the defendant dentist, Robert Shernow (dentist), was entitled to indemnification for damages awarded to the intervening defendant (dentist's victim), the plaintiff in an underlying civil action alleging medical malpractice and sexual assault (malpractice action).[10] Id., 378. Pursuant to the relevant policy, the insurer defended the dentist in the malpractice action "with a reservation of its rights on the question of indemnity. The jury found for the [dentist's victim] on both counts, awarding her $400,000 in damages. The [dentist] moved to set aside the verdict and for a new trial. The trial court, *Hon. James T. Healey*, state trial referee, ordered the verdict to be set aside and a new trial granted unless [the dentist's victim] filed a remittitur within fifteen days. [The dentist's victim] did not file the remittitur and filed her appeal from the trial court's order. That appeal was the subject of *Sciola* v. *Shernow*, [22 Conn. App. 351, 577 A.2d 1081, cert. denied, 216 Conn. 815, 580 A.2d 60 (1990).]" *St. Paul Fire & Marine Ins. Co.* v. *Shernow*, supra, 379. This court reversed the judgment in *Sciola* v. *Shernow*, supra, 351, and remanded the case with direction to reinstate the jury's verdict. Id., 362.

After the dentist's victim appealed, the insurer instituted a "declaratory judgment action seeking a declaration that the [dentist] is not entitled to indemnification under its policy for any part of the damages awarded

---

[10] See *Sciola* v. *Schernow*, 22 Conn. App. 351, 577 A.2d 1081, cert. denied, 216 Conn. 815, 580 A.2d 60 (1990).

to [the dentist's victim]. The trial court, *Langenbach, J.,* dismissed the declaratory judgment action based on its conclusion that (1) the action was premature because the civil action was on appeal, and (2) it was impossible to determine from the jury verdict whether the [dentist] intended to cause the injury that resulted to [the dentist's victim]." *St. Paul Fire & Marine Ins. Co.* v. *Shernow,* supra, 22 Conn. App. 379.[11] Judge Langenbach concluded that it was not possible to tell from the jury verdict in the malpractice action whether the dentist intended to cause injury to the dentist's victim, and, therefore, the declaratory judgment action was not yet ripe. Id., 382. This court disagreed and reversed the dismissal and remanded the case for further proceedings. Id., 384.

This court's reasoning in the declaratory judgment appeal in *St. Paul Fire & Marine Ins. Co.* illustrates what is necessary for an action to be ripe for adjudication. "It is axiomatic that no insurer is bound to provide indemnification or defense beyond the scope of the coverage described in the insurance contract, the policy. . . . The . . . insurer sought to have the trial court make a determination that fulfilled the purpose of a declaratory judgment. It requested only that the trial court decide the issue of whether these claims made by [the dentist's victim] fell under the coverage provided by the [dentist's] policy." Id., 381. A "trial court must construe an insurance policy, like any other contract, in a reasonable way, giving the words their common, ordinary and customary meaning." Id., 382.

The deciding factor in *St. Paul Fire & Marine Ins. Co.* was whether the dentist intended to cause injury to the dentist's victim. The dentist's victim alleged in

---

[11] The insurer's first claim was rendered moot by *Sciola* v. *Shernow,* supra, 22 Conn. App. 251. *St. Paul Fire & Marine Ins. Co.* v. *Shernow,* supra, 22 Conn. App. 379–80.

count one that the dentist, "in the discharge of his duties did assault and batter [her] by making unconsented sexual contact with her, and that the [dentist] later admitted the assault and battery. In count two of her complaint, she alleged that the [dentist] negligently failed to render those professional services with the requisite standard of care and practice. [The dentist's victim] further alleged that she sustained injuries as a result of these actions. A full trial was held on these claims, and the jury returned a verdict in [favor of the dentist's victim] on both counts." Id., 381–82.

The jury returned a general verdict in favor of the dentist's victim and answered special interrogatories, indicating that the dentist injured the victim by making unconsented sexual contact with her as alleged in the malpractice action, breached the standard of care in providing professional treatment to his victim as alleged in the malpractice action and that the breach was the proximate cause of the damages sustained by the dentist's victim. Id., 383–84. This court determined that Judge Langenbach had sufficient facts from which he could have determined whether the dentist's actions were covered by his insurance policy. The complaint of the dentist's victim and the evidence presented at trial clarified her claims, and the jury clearly found in her favor. Id., 383.

In the declaratory judgment action before us, the allegations in the *Thorson* action are known, but the evidence that the plaintiff will present in her effort to prove those allegations and the jury's findings are not. Until the evidence is known, as well as the jury's verdict with respect to those allegations, it is not possible to determine whether the defendant is obligated to indemnify Thorson. The action therefore seeks the answer to a hypothetical question, which is not the purpose of a declaratory judgment action. As the plaintiff stated in her opposition to the defendant's motion to dismiss,

she is seeking advice as to whether to subject the victim to the rigors of litigation. "[A court] must be satisfied that the case before [it] does not present a hypothetical injury or a claim contingent upon some event that has not and indeed may never transpire." *Milford Power Co., LLC* v. *Alstom Power, Inc.*, 263 Conn. 616, 626, 822 A.2d 196 (2003). Here, the plaintiff's claims are not yet ripe because they are contingent on the outcome of the *Thorson* action. We decline to accept the plaintiff's request that the trial court issue, in a factual vacuum, what would in effect be an advisory opinion. We conclude, therefore, that the court properly granted the defendant's motion to dismiss.

The judgment is affirmed.

In this opinion the other judges concurred.